All right, we'll call the first case U.S. v. Muhammad. Good afternoon, Your Honors. My name is Peter Levin, and I represent the appellant in this case, and I'm requesting five minutes for a rebuttal, Your Honors. Very well. Government is allowed to medicate a defendant involuntarily for the purpose of rendering him competent to stand trial in rare circumstances. The question in this case for this Court is whether this case represents those rare circumstances. I would respectfully indicate that it does not. We would submit that the lower court erred as they went through the four factors in cell. But you're not asserting from your letter, it appears, Mr. Levin, that – I'm sorry, is it Levin? Am I saying your name right? Oh, Levin, Your Honor. Levin? Okay. You do not appear to be asserting – in fact, it appears that you are actively waiving any argument that there should have been an administrative hearing. Am I correct about that? Yes, totally. The government in our position, I believe, is exactly the same. So from your client's perspective, this case isn't about, oh, go back and do administrative It's about looking at what the judge did with the cell factors and deciding whether or not the judge was correct in the understanding about how they should apply in these facts. Is that right? That's correct, Your Honors. Washington v. Harper is not an issue in this appeal. Our position is it's not an issue whatsoever. There was nothing in any of the reports that indicated that my client was either a danger to himself or a danger to anyone else. So dangerous is not a factor, and we would submit the Washington v. Harper is not pertinent to this case. Nor should he be examined to determine whether he is or isn't. Well, it would appear from the medical reports that although there was no formal finding as such, that all of the doctors that looked at him, both in Chicago and Butner and in FDC Philadelphia, made a determination as to that or else they would have asked for a hearing along the Harper lines. As to the first factor, Your Honor, we would submit that the special circumstances mitigate against a finding of important government interest. And we would indicate that Judge Rubino, in his opinion, did not fully explain why civil commitment was not a choice in this case. Obviously, we are not saying that the government did not charge him with a serious crime. Conspiracy to commit crack cocaine is very, very serious. But along with that, the Judge Rubino did not consider why civil commitment, he mentioned it, but he did not find why it would not be a choice in this case. I was going to say, isn't it implicit in some of the things he says that we're dealing with a case, multiple co-defendants already charged, convicted, that there's a problem with wrapping the case completely unless this gentleman is taken care of on the criminal charges outstanding? Well, I don't know why it was clear from the government's perspective that my client had to be completed in order to wrap the case up. Everyone else had a jury trial. If Your Honor's find that he, that my client can be medicated and he is found competent to stand trial, he's going to have a jury trial all by himself anyway. It's not a case where all the other defendants are waiting to see what happens with my client so that they can go to trial together. So for the government to say, well, we need to wrap this up quickly to end this case is, to me, doesn't really make a whole lot of sense under these circumstances. There's more to it than that, isn't there? I mean, there are potential cooperating witnesses. There may be fact witnesses who may be implicated, and isn't that, aren't those factors that have to be taken into account in trying to move this forward? Well, I would say yes, but at this point, the case for my client is almost three years old. So, I mean, you can say that if it was within a couple of months and that the witnesses are going to go to some faraway land or something like that, but most of the government witnesses are in custody anyway, and there's no indication that they would not be available to testify. Plus, if Your Honors ask that, rule that Judge Rubino was correct and medicate him, it's still not going to take place immediately. First he has to be medicated, then a report has to come back to the judge. Then I, as his attorney, would have to find that he's okay, that he's communicating with me. And then the judge has to set a trial date. And most of the district, I'm sorry. Yeah, I was going to say, your argument proceeds on the assumption first that he would be civilly committed, right? Well, under the first factor that we're arguing, I'm just arguing the first factor at this point. I'm saying that civil commitment is certainly an option. I believe that was discussed in cell. Right. But your argument appears to be, don't worry about criminal conviction because he'll be off the street civilly committed. If I've understood the pitch right, that's it. But that assumes that he would be civilly committed, right? Something we don't have any assurance of, right? Right. That's one of the arguments that I made under the first prong, that civil commitment is certainly an option. And it would appear in this case from all of the medical reports that he would be, that there would be a motion to have him civilly committed. So we are assuming, yes, we are assuming that. And our position is that Judge Rubino, under the first factor, although he mentioned it, he did not say why it was not an option. Do you know of any case in this context, in the context of forcible medication where civil commitment has been a viable factor? In other words, that that has been a deciding factor? You're saying where civil? Yes. Being civilly committed. I mean, we can always consider civil commitment. I mean, the likelihood of it is something that we have to think about. But has it ever been a deciding factor in any of these cases, in any of these analysis? Has the court said, yes, civil commitment is a certain likely option and therefore we're going to hold back on this? Well, there are a number of cases, obviously, where forced medication was not allowed. Morosen, M-O-R-U-Z-I-N, in New Jersey by Judge, I hope I'm pronouncing it right, Simendahl, where he denied the forced medication. The State case? That was a district, yeah, district case in New Jersey. There, I mean, there have been a number of cases where it was denied. I don't, I don't know what took place afterward because that wasn't in the record, whether these people were civilly committed or not. Can I get you to respond, if I might, to this quote from Sell, which your opponents for their brief. The Supreme Court said, we do not mean to suggest that civil commitment is a substitute for a criminal trial. The government has a substantial interest in timely prosecution and it may be difficult or impossible to try a defendant who regains competence after years of commitment during which memories may fade and evidence may be lost. The future, the potential for future confinement affects but does not totally undermine the strength of the need for prosecution. And, of course, the government's pitch to us is, well, that's exactly the posture we're in. We don't know how long Mr. Mohamed, we don't know whether Mr. Mohamed would be civilly committed. We don't know how long he would be committed for. We've got an interest in taking somebody off the street who we think is dangerous and a problem. And so, I'd like you to respond specifically to that argument that we're hearing from the government. Well, I think that the argument they're making is correct. But there's another side to it, according to Sell, as to what the alternatives are. We are not saying that the government doesn't have an important interest in that, that the witnesses may disappear or they don't want to wait until he regains competence or whatever. But I believe that Sell says, under the first part of the four-part test, that you have to consider what the other alternatives are, which is why they mention the civil commitment. So it's a wait. All right, let me follow through with what Judge Jordan has spoken to you about. We're talking about the Sell factors. What is the first factor? He said, the second sentence is, the government's interest in bringing to trial an individual accused of a serious crime is important. And then the court quotes Justice Brennan, power to bring an accused to trial is fundamental to a scheme of ordered liberty and prerequisite to social justice and peace. Now, I want you to try to convince me that the possibility of a civil commitment overrides these introductory statements in Sell. Well, I don't know that it would override it. But I'm saying it's a factor that should be looked at. And what I am saying is, Judge Rubino, in his opinion, although he mentioned civil commitment as one of the arguments that the appellant made, it's my position that he did not say why civil commitment is not an option in this case strong enough to be considered in the balancing of the first factor. Now, did the court in Sell mention civil commitment in any of the factors? In the first factor. The court in Sell did mention civil commitment in the first factor. It said that the defendant's failure to take drugs voluntarily, for example, may mean lengthy confinement in an institution for the mentally ill. And that would diminish the risks that ordinarily are attached to freeing without punishment one who has committed a serious crime. Yes. Then read the next sentence. The next sentence says, we do not mean to suggest that civil commitment is a substitute for a criminal trial. The potential for future... That seems to be what you are arguing this morning. Well, I'm saying that it's a factor that should be considered in the first factor. I probably should have started with my strongest factor first, which was factor four. Let me stop you because your red light is on. Okay. Perhaps we can, when you come back, you can, Judge Albert, if you want to follow up with some of the questions. Okay, great. Thank you. Okay. Thank you. Mr. Estolfi? Estolfi, yes, sir. Good afternoon, Your Honors. Salvatore Estolfi on behalf of the United States in this appeal. I'll begin by saying that the uncertainty of civil commitment is certainly, or does not override the government's strong interest in bringing Mr. Mohammed to trial on these very serious charges. It's a factor that's always uncertain, is it? I mean, you would not ever get to the point where you would test it out and see if this individual is going to be committed or not. That's correct. And that won't occur unless the government fails in this appeal. In this case, it's remanded that the government would have to consider the possibility of But, again, our position is that the uncertainty of the civil commitment, even if we had certain civil commitment here, it does not undermine the government's strong interest in prosecuting. You mean even if it were sure that this individual was going to be committed, we would still go and consider the other factors? I submit to the Court that that would be correct, because the strength of the government's interest in this case is very high. Overrides the idea of civil commitment? Absolutely. And the point of the case is that, first of all, we have certain interests that have to be vindicated here. Mr. Muhammad is alleged to have committed a very serious crime. And the cell court, the Supreme Court, has stated that bringing him to trial is very important. And this Court, in United States v. Great, has determined that or has instructed us that in determining the seriousness of the charges, you have to look at certain things, including the special circumstances that Mr. Levine referred to. But one of the other things you have to refer to is the penalties that Mr. Muhammad is facing in this case. He's facing a mandatory minimum of 10 years imprisonment up to a statutory maximum of lifetime. In addition, his sentencing guidelines— I don't understand your opponent to be suggesting he won't face those penalties at some point. I think what I hear your opponent saying is, you shouldn't let my client be put involuntarily under a needle or forced drugs in some other fashion without the district court first figuring out and specifically speaking to whether a period of civil commitment wouldn't be an alternative. I mean, I don't want to put words in his mouth, but I take that to be the gist of it. What's wrong with that argument? Well, what's wrong with that argument is even if Mr. Muhammad was civilly committed here, there's no certainty as the length of time that he'll be committed. And during that period of time that he is committed, a determination has to be made as to whether or not he ever regains competence. If that occurs 5, 10, 15 years down the road, then the government's in a position where we have to then go forward with our prosecution. And at that point, as you stated earlier, Judge Fuentes, that perhaps at that time witnesses' memories have faded. Stale evidence. Stale evidence, witnesses' memories, things that may not exist anymore. And it's important to point out also that Mr. Muhammad himself has an interest in making sure that this case is tried in a speedy fashion because he himself may have witnesses that may no longer be available 5, 10, or 15 years down the road. Indeed, the judge seems to think he's got an interest in starting his sentence so he can finish his sentence. That's something Judge Robrino said, right? Well, I think that that's important to consider because Mr. Muhammad right now is just languishing in prison. At least if he's restored the competency, he'll have his day in court on these charges. If he's convicted, he'll be sentenced. At that point, he'll know that there's a light at the end of the tunnel, so to speak. Whether his sentence be 10 years or 20 years, he has some certainty as to what his future holds. Mr. Stolfi, let me ask you this. Your learned opponent has said on a number of occasions in his brief that the test here for whether or not you've demonstrated what you need to undersell is clear and convincing evidence. You need to have shown the things that sell requires by clear and convincing evidence. Is that an accurate statement of the burden? It is. Undersell, the government's burden is to prove each of the factors by clear and convincing evidence. And I submit to the court that that's what Judge Rubino found. And we would certainly ask you to affirm that. Mr. Stolfi, you heard my question about did the district court discuss civil commitment? And if I recall your friend's answer, he says, but not in the first factor. Is that right? Did he say that? I believe that's what Mr. Levin said. But that's not correct. Because in discussing the first factor, his Honor, Judge Rubino did, in fact, discuss the potential for civil commitment. And he held that it was not. Sure. And he also said, we do not mean to say, quoting the Morrison case, we do not mean to suggest that civil commitment is a substitute for a criminal trial. So there was a discussion of civil commitment under this first factor, contrary to what your friend argued to us a few minutes ago. Your Honor, that is my understanding. And that's the way we addressed it in our brief as well. Not only did Judge Rubino. I'm sorry. I said thank you. Oh, OK. Now, the standard of our standard for our review of Judge Rubino's decisions or what is it? We consider the first issue the de novo. Is that correct? Yes. The first factor is you have to apply the de novo standard of review. And then with respect to the final three, you apply the clear error standard. All right. So we would find that he would have to find that he clearly made a mistake as far as his analysis of the last three. That's correct. And I submit to the Court that there's been nothing advanced by Mr. Levin that would suggest otherwise. In fact, each of the decisions reached by Judge Rubino are sound. And there certainly is no clear error with respect to the final three factors. And making your determination de novo with respect to the first factor, I think it's beyond approach that. It's a very difficult factor because we don't have any baseline, any way of looking at whether, in fact, there is a likelihood of civil commitment. Well, I don't think that's the complete analysis, really. And as Judge Jordan stated earlier, there's sort of a balancing that goes on. Well, I understand the balancing between the first and the other factors, right? Well, no, I think there's a balancing within the first factor as well. Because once you find that there's an important government interest, then you sort of have to measure the strength of the interest. And in doing so, you look at the special circumstances. And in this case, there are special circumstances on both sides. And maybe I didn't ask the question correctly. I'm sorry. With regard to the likelihood or probability of a civil commitment, there's very little way of our knowing that this person is going to be civilly committed. Well, I agree. And again, that won't occur until sometime later. In almost every case, that's going to be the circumstances. How do we know that an individual has a likelihood of being civilly committed? We don't. But I don't think that disturbs the discussion in any way whatsoever. Because again, that's one special circumstance that's advanced by Mr. Levin. And regardless of how that comes out, even if you assume for a moment that he will be civilly committed, that does not override the government's strong interest. So in virtually every case, we have to weigh the seriousness of the offense and the government's importance in prosecuting versus the possibility or likelihood of a civil commitment? And or any other special circumstances. But in this case, there's only been one advanced. And there's no other ones that I'm aware of. But yes, you have to consider that in each and every case. Not virtually every case. Every single case. That's our position. How about the argument that we started to hear, I think, from Mr. Levin, which is that the fourth factor is the strongest point he has to make. Is it medically appropriate? Right. And he points in his briefing to the serious problems that can arise when anti-psychotic drugs are administered. Potential side effects. In some cases, even life-threatening side effects. What's the response that you make to his assertion that Judge Rubino just didn't take seriously enough those potential side effects in deciding that this was medically appropriate? First, I wholeheartedly disagree with his argument. Because I think Judge Rubino did. But with respect to the side effects of the drugs, I think that's more appropriately considered under the second factor. However, if Mr. Levin wants to address it under the fourth factor, the question is whether or not it's medically appropriate. And the doctors in this case testified that the only way to restore Mr. Muhammad or to treat his illness of schizophrenia disorganized type is to medicate him. That's the only way. Now, Dr. Berger testified based on his 32-plus years experience of treating patients. And he stated that it was in excess of thousands of patients who used these and other similar drugs on during that period of time. And he has seen the results. And he has seen people restored based on the same type of treatment he wants to give to Mr. Muhammad in this particular case. With respect to the side effects, each and every one of the side effects that we discussed in the district court are manageable. Dr. Berger stated that he'll first start with a test dose to take a precaution. Let's see how Mr. Muhammad reacts to a small dose of this drug. Importantly, he also stated that he has a background in child psychiatry. And because of that, his approach to administering drugs in general is to take it very slow. He's not going to start with a test dose and then jump up to some monstrous dose. Well, let's say his mental functioning is restored so that he can discuss his case with his attorney and we were to agree with you and the case goes forward. Yes. There's a problem in the middle of a trial so that he starts losing it, let's say, the presence of a jury. What kind of safeguards would be put in place to prevent prejudice? As Dr. Berger testified- Is there going to be a doctor in the courtroom? No, but there are doctors across the street at the Federal Detention Center in Philadelphia who would be able to appropriately address those concerns. And I'll tell the court now, if that were to occur during the trial, of course, the government, defense counsel, as well as the drug judge would immediately want to address that issue. I would not want to proceed with the trial if Mr. Mohammed started showing signs of incompetency or some other disturbing outward signs that would perhaps prejudice him. We want to address that right away. That can be done, as Dr. Berger testified, by adjusting the dose of the medicine, giving him counteractants, medicine that would offset the side effects that he's feeling at a particular point in time. So everything that Mr. Levin has expressed concern over can be addressed with medical treatment. That's an important issue for this Court to consider. No other questions, sir? Okay. I have no other. Okay. Thank you. Thank you very much. I would mispronounce your name. Levin? Levin, Your Honor. Levin, okay. Can I take the additional four minutes that he didn't use? If Your Honor's please, I would like to begin with what you were just discussing with my co-counsel, not my co-counsel, with my opponent here. And that would be the second factor. And I would state that each of these factors must be found. We were talking about the civil commitment as one of the first factors. But it's not a balancing among all four factors. The Court has said that each factor must be established before he can be involuntarily medicated. And Your Honors were asking government counsel about the second factor, which has two prongs to it. First, that he has to be found, that the evidence had to prove that he was competent to stay in trial. And two, that there would be no side effects. And what we had argued to Judge Rubrino is the doctors who examined him at Butner knew nothing about him. They said they didn't know his medical history. They knew he had had some seizures. They knew he had some heart problems. They had no idea whether he had used drugs in the past. And obviously, if he had used drugs, that could affect his treatment. They knew nothing about, they had spoken to no one in his family. This is a man who had been evaluated three separate times, right? Correct. By four different doctors, right? Correct. And there was a uniformity of opinion that the man was incompetent, correct? Correct. And when he got to Butner and he was being cared for there, there's a not insubstantial period of time where he's under observation and attempted treatment, correct? Correct, Your Honor. Okay. And in the course of that, he refuses any kind of treatment. He won't participate voluntarily in anything. So the question I have for you is, when you have a circumstance like that and you have a doctor like Dr. Berger or Dr. Grant who have treated thousands of patients and say, these drugs are administered all over the country, all over the world. This is not some new experimental treatment. We know we can start him on this. And it's got a high probability, 70% to 80% chance of doing the man real good. When that's the evidence in front of Judge Rubino, why would he think it's not medically appropriate? Why would he think this isn't a good step? Well, number one, because what I was arguing to Judge Rubino is we know nothing about my client's past. Obviously, prison doctors saw him in four different prisons, which could be a problem. I mean, on the one hand, we have to think of the patient as medical history. How is a patient going to relate to doctors who he knows work for the prisons? Is he going to be forthwith and interested in his medical condition? Or is he going to realize that these people who work for the prison are out to get him? What if he has very minimal medical history or it's simply inaccessible? The doctors said that they were unable to access it. So we don't know if he's had psychotic episodes in the past. We don't know if we've received medical, mental treatment in the past. We know nothing about that whatsoever. And they're saying, all right, well, let's treat him with these drugs, even though we don't know his history. Do you have any evidence at all, Mr. Rubin, that if this gentleman were presenting on the outside, or he had family members who were able to involuntarily commit him, that he wouldn't be medicated? I mean, if he's refusing to participate in any other kind of psychotherapy and he's clearly severely mentally ill, do you have any indication that this isn't the course of treatment that would be indicated whether or not he were in the criminal system? Well, I assume there's many people in mental institutions that are not medicated and they're being housed in the institution. But I also wanted to go to the side effects, which are not minimal. And Your Honor has asked the question, what happens during the trial? Now, the Dr. Berger said, well, he can be monitored. Dr. Berger is not going to come to Philadelphia and sit here during the trial. If the client starts grimacing and he makes faces and he makes weird sounds, Dr. Berger says, well, he can be monitored during the trial. How is he going to be monitored? They're in North Carolina. He's here in Philadelphia. Obviously, the psychiatrists in Philadelphia don't know how to manage him, the doctors at the prison. I didn't understand that to mean that Dr. Berger himself monitored the defendants. My question is, who is going to monitor him throughout the trial? The doctors in Philadelphia cannot at the FDC. That's why he was sent to Butner in the first place, because they never had a case like this. Counsel, counsel, the issue before us, is that issue before us? Isn't the issue about competency to stand trial? And I think we have to keep our eye on the ball there. Well, under, I'm sorry, under Factor 2, under Factor 2B, side effects is certainly something that your honors have to consider in determining whether the involuntary medication will further the government's interest. That's Factor 2 under cell, side effects. And I'm submitting that the side effects could not be minimized. I wasn't referring to that, was I? I was referring to the scenario that he was competent to stand trial, but in the middle of the trial, he went off the wall. Well, I believe that's... I'm suggesting that that is not before us. Well, I would disagree, your honor, because side effects are considered under the second factor of cell. And if a side effect is... I'm not talking about... Okay. ...of the initial administration of anti-psychotic judges. If I said that, I must apologize that I wasn't clear enough. Okay. Okay, your red light is on. Okay, thank you, your honor. Thank you very much. Thank you for your very helpful argument. Thank you. Thank you.  Judge Alvis, sir. Good afternoon, your honor. Good afternoon.